DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant Jeanette M. ("Mother") has appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to three of her minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I {¶ 2} At issue in this case is the custody of three of Mother's children: A.C., born February 2, 2004; Z.C., born June 24, 1998; and J.M., born February 13, 1997. Mother also has a fourth child, C.M., born March 31, 2005. In the *Page 2 
proceedings below, CSB sought permanent custody of that child also, but the trial court granted legal custody of CM. to Michelle Tanner, the child's paternal aunt, and that decision has not been appealed. None of the alleged fathers have appealed.
 {¶ 3} On September 4, 2004, A.C., Z.C, and J.M. were being driven by one Danny Hamby, the one-time paramour of Mother and the father of CM., in a high speed chase, as he was being pursued by police for a parole violation. When the police saw that there were children in the car, they ended their pursuit and subsequently found the children left alone in their home while Hamby sought to escape. A.C, Z.C, and J.M. were removed from the home by the Akron police pursuant to Juv.R. 6. Hamby was later arrested and charged with having weapons under a disability, child endangering, obstructing official business, and willful fleeing of a police officer. Hamby was a registered sex offender, having been convicted of unlawful sexual conduct with a minor and had been ordered not to be around small children at any time. See State v. Hamby, Summit County Court of Common Pleas, Case No. CR 2002-09-2569. Mother apparently claimed she had arranged for a 17-year-old boy to baby-sit her children and could not explain why the children were with Hamby instead.
 {¶ 4} CSB filed complaints in the juvenile court, alleging that Mother had a history of substance abuse and mental health issues and that she frequently left her children in the care of inappropriate caregivers, that is, men with histories of *Page 3 
drug or sexual offenses. A.C., Z.C, and J.M. were adjudicated as abused, neglected, and dependent children, and were placed in the temporary custody of CSB. Subsequently, the fourth child, CM., was born and adjudicated to be a dependent child. That finding was sustained in a separate appeal. See In re CM., 9th Dist. No. 22940, 2006-Ohio-1908.
 {¶ 5} In July 2005, CSB moved for permanent custody of all four children. The proceedings were stayed as to CM. because the appeal from her adjudication was pending at the time. See In re A.C., Z.C., andJ.M, 9th Dist. No. 23090, 2006-Ohio-3337, at ¶ 5. The matter proceeded to a hearing with regard to the three older children, and the trial court granted permanent custody of those children to CSB. On June 30, 2006, this Court reversed the judgment of the trial court, finding that the trial judge incorrectly calculated the time the children had been in the temporary custody of the agency when it relied on the 12-of-22 provision of R.C. 2151.414(B)(1)(d). Seeln re A.C, Z.C, and J.M, at ¶ 17.
 {¶ 6} In July 2006, CSB again moved for permanent custody, and the cases of all four children were consolidated. On September 28, 2006, Mother filed a series of motions, including: a motion seeking custody in herself and her current husband; a motion seeking an award of custody to relatives; a motion challenging the constitutionality of R.C. 2151.414; a motion seeking a six-month extension of temporary custody; a motion seeking dismissal of the permanent custody motion on the basis that there were suitable relatives for custody and that CM. has been in *Page 4 
temporary custody less than one year; and a motion to dismiss for failure to make reasonable efforts to return the children to Mother's home. Michelle Tanner, a paternal aunt, had been a respite caregiver for CM., and she sought legal custody of all four children on her own behalf. On October 23, 2006, Mother moved to dismiss the case "because no extensions have been granted in these cases and time has expired, the cases should be dismissed for lack of jurisdiction or loss of jurisdiction."
 {¶ 7} Following a four-day hearing with 25 witnesses, the trial court placed CM. in the legal custody of her paternal aunt, Michelle Tanner, and placed A.C, Z.C, and J.M. in the permanent custody of CSB. The court specifically found that A.C, Z.C, and J.M.: (1) had been in the custody of CSB for 12 of 22 months, pursuant to R.C. 2151.414(B)(1)(d); (2) had been abandoned by their fathers, pursuant to R.C 2151.414(B)(1)(b); and (3) cannot be placed with either parent within a reasonable time or should not be placed with either parent, pursuant to R.C.2151.414(B)(1)(a). In addition, the trial court found that it was in the best interest of CM. to be placed in the legal custody of Ms. Tanner, and that it was in the best interest of A.C, Z.C, and J.M. to be placed in the permanent custody of CSB, pursuant to the factors of R.C.2151.414(D). Accordingly, the trial court granted legal custody of CM. to Ms. Tanner and granted permanent custody of A.C, Z.C, and J.M. to CSB. All other dispositive motions were overruled. *Page 5 
 {¶ 8} Mother has timely appealed and has assigned five errors for review. The assignments of error have been rearranged for ease of discussion.
 II Assignment of Error II "THE TRIAL COURT ERRED IN FAILING TO DISMISS THE CASE FOR FAILURE TO TIMELY FILE THE MOTION FOR PERMANENT CUSTODY."
 {¶ 9} Mother has asserted that the complaint should have been dismissed because the motion for permanent custody upon which the case was decided was filed on October 30, 2006, more than one year after the November 23, 2004 adjudication. In support of her argument, Mother has cited R.C. 2151.413(D)(1) and R.C. 2151.353(F). R.C. 2151.413(D)(1) provides that if a child has been in the temporary custody of a public children services agencies for 12 or more months of a consecutive 22-month period, "the agency with custody shall file a motion requesting permanent custody of the child." R.C. 2151.353(F) provides:
 "Any temporary custody order issued pursuant to division (A) of this section shall terminate one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care, except that, upon the filing of a motion pursuant to section 2151.415 of the Revised Code, the temporary custody order shall continue and not terminate until the court issues a dispositional order under that section."
 {¶ 10} Mother has further relied on In re Travis Children (1992),80 Ohio App.3d 620, in which the Fifth District Court of Appeals held that, if the temporary custody order expires on the sunset date pursuant to the mandatory *Page 6 
language of R.C. 2151.353(F), the trial court loses jurisdiction over the case and is without authority to issue any further dispositional orders. Travis, 80 Ohio App.3d at 624-625.
 {¶ 11} Travis is no longer good law on this issue, however, as it reflected the position taken by some appellate districts before a conflict was certified to the Ohio Supreme Court, which later rejected that view. In In re Young Children (1996), 76 Ohio St.3d 632, 636, the Supreme Court explicitly held that the time periods of R.C. 2151.353(F) are not jurisdictional in nature.
 {¶ 12} As was explained by one appellate court that had taken a different position on the issue, "the statutory time limitations contained in R.C. 2151.353(F) are directory rather than mandatory because they exist for the assurance of the prompt resolution of child custody matters rather than as a jurisdictional prerequisite to custody determinations[.]" In re EM. (Nov. 8, 2001), 8th Dist. No. 79249, at *8. Orders of temporary custody are limited so that the children are not left in limbo. "The limitation is not so much for the benefit of the parent as it is for the benefit of the child." Young,76 Ohio St.3d at 641 (Cook, J., concurring in part and dissenting in part).
 {¶ 13} Moreover, pursuant to R.C. 2151.353(E)(1), the juvenile court retains jurisdiction "over any child for whom the court issues an order of disposition * * * until the child attains the age of eighteen years[.]" See Young 76 Ohio St.3d at 640 (Cook, J., concurring in part and dissenting in part). "After an *Page 7 
adjudication that the child is abused, neglected or dependent and the issuance of a dispositional order, all further placements must be court-ordered." Id. at 641.
 {¶ 14} Because the trial court retained jurisdiction over the case, it had no reason to dismiss it and did not err in failing to do so. The second assignment of error is overruled.
 Assignment of Error III "THE TRIAL COURT'S DECISION TERMINATING APPELLANT MOTHER'S PARENTAL RIGHTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 15} Mother has asserted that the trial court's decision terminating her parental rights is against the weight of the evidence.
 {¶ 16} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95,99. *Page 8 
 {¶ 17} The Ohio Supreme Court has recently reaffirmed that the manifest weight of the evidence standard to be applied in civil cases is that standard which was explained in C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus. See State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 24. Thus, a permanent custody decision "supported by `some competent, credible evidence going to all the essential elements of the case' must be affirmed." Wilson, 113 Ohio St.3d at ¶ 26, quoting C.E. Morris Co, 54 Ohio St.2d at syllabus.
 {¶ 18} In her supporting argument, Mother has challenged, albeit briefly, both prongs of the permanent custody test.
 {¶ 19} The trial court found that the first prong of the permanent custody test was satisfied because (1) the children had been in the temporary custody of CSB for at least 12 of the prior 22 months, see R.C. 2151.414(B)(1)(d); (2) the fathers had abandoned the children, see R.C. 2151.414(B)(1)(b), and (3) the children cannot be placed with either parent within a reasonable time or should not be placed with either parent, see R.C. 2151.414(B)(1)(a).[1]
 {¶ 20} In concluding that the children cannot or should not be placed with a parent, the trial court relied on R.C. 2151.414(E)(1). R.C.2151.414(E)(1) provides: *Page 9 
 "Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 21} In regard to this factor, the trial court found that Mother had failed to make any progress on her case plan. She was currently homeless and unemployed, and she had not completed mental health or substance abuse counseling. The trial court further found that Mother must rely on others to assist her in meeting her own basic needs and is not capable of caring for active youngsters. The court concluded that Mother failed, despite the diligent efforts and reasonable case planning by the agency, to remedy the conditions that brought the children into care — even though she had had since September 7, 2004 to do so.
 {¶ 22} Here, Mother's challenge to the finding that the children cannot or should not be placed with a parent within a reasonable time has two parts. First, she has argued that "the court incorrectly applied R.C. 2151.414(E)(1) to satisfy the first prong because it is unconstitutional." Mother offers no explanation and makes no argument supporting her claim that R.C. 2151.414(E)(1) is unconstitutional, however. Nor did she raise the claim below. The "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its *Page 10 
application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." State v. Awan (1986), 22 Ohio St.3d 120, syllabus. See, e.g.,In re C.F., 9th Dist. No. 02CA008084, 2002-Ohio-6113, at ¶ 37-38. See, also, App.R. 12(A)(2) and 16(A)(7). That argument is accordingly overruled.
 {¶ 23} Next, Mother has asserted that she made "substantial strides" to remedy the conditions that led to the removal of the children, and that she "substantially complied" with her case plan. She has claimed she utilized the psychological, social, and rehabilitative services and material resources that were made available to her in order to change her conduct and permit her to resume her parental duties. She has asserted she pursued chemical dependency treatment and mental health treatment throughout the duration of the case.
 {¶ 24} Relevant evidence before the trial court included the following. Gina Crawford, a psychologist at Northeast Ohio Behavioral Health, performed a parenting evaluation of Mother in April 2005. She expressed concern with Mother's judgment, insight, and ability to recognize risk to her children in light of her involvement with men who have histories of criminal sexual offenses.
 {¶ 25} Edra Williams, CSB caseworker from March 2006, affirmed Mother's continued instability in terms of housing and employment and described her inconsistency in attending visitation with her children, which caused her to be *Page 11 
taken off the visitation schedule twice. Williams also described the significant needs of three of the children. Z.C. had been diagnosed with bipolar disorder and attention deficit hyperactivity disorder ("ADHD"). She is on an individual education program ("IEP") at school and has behavioral problems. J.M. has also been diagnosed with bipolar disorder and ADHD. He is in special education at school, receives counseling, and has behavioral problems. CM., who has been placed in the legal custody of Ms. Tanner, has been diagnosed with trichotillomania, hair pulling, and is seeing several specialists, including a dermatologist and a developmental physician.
 {¶ 26} Lisa Proctor and Christine Head, both case managers at the Community Health Center, testified to Mother's continuing drug problems. Proctor testified that Mother tested positive for cocaine while she was pregnant, and Head testified that Mother relapsed on drugs while she had been a service provider on this case.
 {¶ 27} Maureen Keating, director of women and family services at the Community Health Center and a chemical dependency counselor, also provided case management services for Mother. She testified that Mother did not successfully complete anything on her case plan. Because Mother failed to attend sessions for months, the agency had to terminate her from treatment. Keating felt Mother would require long-term treatment. *Page 12 
 {¶ 28} Eleanor Rusinek, a psychotherapist at Portage Path, had worked with Mother since 1999 on a combination of voluntary and court-ordered referrals. She testified that the same issues continued to plague Mother throughout these years: dependency on men, history of sexual abuse, substance abuse, and parenting issues. Overall, Rusinek stated that Mother was inconsistent in her efforts, never completed treatment, and had no change in her behavior. Rusinek stated that she would be concerned if the children were placed in Mother's care, since she has not been able to maintain stable employment or housing and has been involved with inappropriate men. Rusinek believes that Mother loves her children, but has limited insight into what options would be best for them and lacks the stability to provide for them on a full-time basis.
 {¶ 29} Penny Griffith, a psychologist at Northeast Ohio Behavioral Health, testified regarding her work with the children. She stated that Z.C. and J.M. require more attention than children without their problems. They require a very structured home environment with consistent limits and constant supervision. Both need adult communication and close contact with school services.
 {¶ 30} Shante Danzy, CSB social worker, worked with the family from June 2002 until April 2005, including work on a previous case. Danzy testified that she often provided transportation herself for the family and also provided them with bus passes. Danzy agreed with therapist Rusinek that Mother's first case plan reflected the same needs as her last, with little progress accomplished. *Page 13 
Danzy testified that she was concerned with Mother's lack of stable housing and her association with people who had violent criminal histories, drug involvement, and were registered sexual offenders. Danzy also commented on Mother testing positive for cocaine and propoxyphene in January 2005 and her failure to engage in counseling. Danzy observed 24 visits between Mother and the children. She said Mother appeared to be bonded with the children, but engaged in little interaction with them.
 {¶ 31} Karen Annis, CSB social worker, was assigned to the case from April 2005 to March 2006. She testified that Mother was frequently homeless, had unstable employment, and did not follow through with mental health counseling or substance abuse tests. Annis testified that Mother never demonstrated insight into the children's needs and the problems caused by her living arrangements. At visits, Annis observed Mother sitting and eating snacks provided by a foster parent and talking with adults in the room while the children played. Annis felt that Mother did not interact with the children or supervise them properly.
 {¶ 32} Alan Futo, CSB social service aide, supervised many of Mother's visits with her children from September 2004 until December 2005. During that period, he said Mother attended 35 or 36 visits and missed 15. He expressed concern with Mother's behavior, claiming she was not very affectionate with any of the children, would yell at them, would scavenge food from other people's *Page 14 
visits after they had left, and had trouble supervising all the children together. Futo further testified most parents improve their parenting skills over time, but this Mother was virtually unique in that she displayed no improvement in her parenting over the course of this case. She rarely provided any food for the children. When she did bring in a wrapped snack, she forgot to open it for the youngest child and the child was then found attempting to bite through the wrapper.
 {¶ 33} Guardian ad litem Heather Dyer testified that her preference would be to place all four children with the Tanners, and alternatively, to place them in the permanent custody of CSB. She did not recommend that the children be returned to Mother. In addition, she expressed great concern about C.M.'s current foster placement (not the Tanners) and believed CM. should be removed from that placement immediately.
 {¶ 34} Additional statements were made by one set of foster parents who had provided foster care to all three children for a period of time, and by another set of foster parents who took over foster care of A.C. from the first couple when the child seemed to be reflecting some behavioral problems from her siblings.
 {¶ 35} Upon review of the record, we conclude that the trial court's finding that A.C, Z.C and J.M. could not or should not be placed with a parent within a reasonable time was amply supported by competent, credible evidence.
 {¶ 36} We next consider Mother's argument regarding the second prong of the permanent custody test. When determining whether a grant of permanent *Page 15 
custody is in the children's best interest, the juvenile court must consider the
following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 "(5) Whether any of the factors in divisions (E) (7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1)-(5).
Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. See In re Smith (Jan. 2, 2002), 9th Dist. No. 20711, at *3; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24.
 {¶ 37} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts *Page 16 
sought to be established." In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 38} As to this portion of the permanent custody test, Mother makes no legal or factual argument regarding the factors involved in a determination of the best interest of the children, except in the context of the first factor — the interaction and interrelationships of the children. In that regard, Mother briefly points to the testimony of the guardian ad litem and indicates that the guardian ad litem believed the children love their mother and would benefit from a relationship with her.
 {¶ 39} A review of the referenced testimony indicates that Heather Dyer, the guardian ad litem, testified that the two oldest children loved their mother and that "some limited supervised contact" with her would be beneficial in the future. However, the guardian ad litem also testified that Mother's behavior confused and conflicted the children. Significantly, she did not recommend that the children should be returned to Mother on a full-time basis. Rather, Dyer stated that she believed it was in the best interest of the children to be placed in the legal custody of the Tanners, and, alternatively, to be placed in the permanent custody of CSB. Accordingly, Mother's very brief argument is not supported by the record and does not support a reversal of the trial court's finding regarding the best interest of the children. *Page 17 
 {¶ 40} Mother's third assignment of error is overruled.
 Assignment of Error I "THE TRIAL COURT ERRED IN RULING THAT R.C. 2151.414(B)(1)(d) IS CONSTITUTIONAL."
 {¶ 41} Through her first assignment of error, Mother has asserted that R.C. 2151.414(B)(1)(d) is unconstitutional in that it violates equal protection and due process of law by depriving her of the right to raise her children without a finding of unfitness.
 {¶ 42} The trial court relied upon this provision in satisfaction of the first prong of the permanent custody test and found that the provision is constitutional. However, the trial court also relied upon another factor in satisfaction of the first prong of the permanent custody test. The trial court found that the children cannot be placed with a parent within a reasonable time or should not be placed with a parent, pursuant to R.C. 2151.414(B)(1)(a). That finding has been affirmed by this Court in its discussion of Assignment of Error III. Consequently, it is not only unnecessary to address the constitutionality of R.C. 2151.414(B)(1)(d), but it is also inappropriate. As explained by the Ohio Supreme Court, courts should not determine the constitutionality of legislative enactments, "unless it is absolutely necessary to do so * * * [a]nd such necessity is absent where other issues are apparent in the record which will dispose of the case on its merits." (Internal citations omitted.) Greenhills Home OwnersCorp. v. Greenhills (1966), 5 Ohio St.2d 207, 212. See, also,Christensen v. Bd. of Commrs. on Grievances *Page 18 Discipline (1991), 61 Ohio St.3d 534, 535. ("Constitutional questions will not be decided until the necessity for a decision arises on the record before the court.") Given our resolution of the third assignment of error, it is not necessary to consider the constitutionality of R.C.2151.414(B)(1)(d). This assignment of error is moot, and is, therefore, overruled. See App.R. 12(A)(1)(c).
 Assignment of Error IV "THE TRIAL COURT ERRED IN FAILING TO GRANT LEGAL CUSTODY TO MICHELLE TANNER, A RELATIVE."
 {¶ 43} Mother has asserted that the trial court erred in failing to grant legal custody of A.C., Z.C, and J.M. to Michelle Tanner. Ms. Tanner is the paternal aunt of CM., the youngest of the four children involved in this custody case, but is not a blood relation to the other children. The trial court granted legal custody of CM. to Ms. Tanner, but declined to award legal custody of the other children to the Tanners and instead placed them in the permanent custody of CSB.
 {¶ 44} Mother contends that R.C. 2151.413(B) bars permanent custody in this case and requires that legal custody be granted to Ms. Tanner, apparently because she was a suitable relative.
 {¶ 45} R.C. 2151.413(B) provides:
 "A public children services agency or private child placing agency that, pursuant to an order of disposition under division (A)(2) of section 2151.353 of the Revised Code or under any version of section 2151.353 of the Revised Code that existed prior to January 1, 1989, is granted temporary custody of a child who is orphaned may file a motion in the court that made the disposition of the child *Page 19 
requesting permanent custody of the child whenever it can show that no relative of the child is able to take legal custody of the child."
 {¶ 46} This section of the revised code allows a public children services agency to file for permanent custody when that agency has temporary custody of an orphaned child and "no relative of the child is able to take legal custody * * *." Id. However, it is clear that the children in this case are not orphaned and this statute, therefore, has no application to the case at bar.
 {¶ 47} Moreover, there is no requirement in a permanent custody case that the juvenile court find that no suitable relative placement is available before finding that the best interest of the children is served by a grant of permanent custody. In re Schaefer,111 Ohio St.3d 498, 2006-Ohio-5513, at ¶ 64. The Schaefer court explained that R.C.2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). Id. "[R.C. 2151.414] does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." Id.
 {¶ 48} Mother further points out that the guardian ad litem recommended placing all four children with the Tanners. However, this Court notes, as did the trial court, that Ms. Tanner is not a blood relative to A.C., Z.C., or J.M. And while the guardian ad litem did believe that the Tanners would be suitable custodians who would allow the children to remain together and recommended that all four *Page 20 
children be placed in their legal custody, she also offered an alternative recommendation in apparent recognition of the fact that adding four children to the Tanners' household would be a difficult challenge.
 {¶ 49} The trial court found that while the Tanners offered a viable alternative to permanent custody, placing A.C., Z.C, and J.M. with them was not deemed to be in their best interest because Ms. Tanner is not a biological relative to the children and has had limited contact with them. In addition, Ms. Tanner and her husband were already raising four children, and CM. would make five. The court was concerned that the strain of three additional children would cause an insurmountable financial hardship on the family. Furthermore, J.M. and Z.C. have many behavioral issues that have already been seen to affect A.C. and might jeopardize a joint placement.
 {¶ 50} Finally, during an in camera interview, the children seemed to be equally comfortable with staying with the Tanners, Mother, or their foster parents and even inquired if their time could somehow be split among the various caregivers. The children expressed no clear preference regarding custody.
 {¶ 51} The trial court did not err in failing to grant legal custody of A.C, Z.C, and J.M. to Ms. Tanner. The fourth assignment of error is overruled.
 Assignment of Error V "THE TRIAL COURT ERRED IN FINDING THAT CHILDREN SERVICES USED REASONABLE EFFORTS." *Page 21 
 {¶ 52} In her fifth assignment of error, Mother contends that CSB failed to use reasonable efforts. Her complete argument asserts: "Children Services did not assist mother to find housing and did not make a single referral for same throughout the entire case."
 {¶ 53} A review of the record demonstrates, however, that while some of Mother's many service providers may not have assisted Mother with housing, several others did attempt to help Mother find housing and one even testified that she was misled by Mother about the status of her housing. Lisa Proctor, case manager at Community Health Center, testified that she took Mother apartment-hunting and Edra Williams, CSB caseworker, testified that she offered to help Mother with housing, but Mother declined the offer of help. Shante Danzy, another CSB caseworker, testified that Mother had been untruthful to her and to CSB about her housing — failing to tell them of a notice of eviction and that her gas had been turned off. The record also includes evidence that Mother was evicted from housing on multiple occasions. The record demonstrates, therefore, that some help was given, that additional offers of help were made by service providers, and that Mother was often unable to maintain housing once she did secure it.
 {¶ 54} Upon this record, this Court cannot conclude that CSB failed to use reasonable efforts to help Mother secure and maintain housing. Mother's fifth assignment of error is overruled. *Page 22 
 III {¶ 55} Mother's five assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 BETH WHITMORE FOR THE COURT *Page 23 
SLABY, P. J.
MOORE, J.
CONCUR
[1] Mother's challenge to the constitutionality of R.C.2151.414(B)(1)(d), the "12 of 22" provision, is overruled elsewhere in this opinion. See ¶ 42, infra. The fathers have not chosen to appeal, and there is, consequently, no appellate challenge to the finding of abandonment. *Page 1