[Cite as *In re B.B.C.*, 2024-Ohio-588.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE B.B.C. | : | |
| | : | No. 113213 |
| A Minor Child | : | |
| | | |
| [Appeal by J.R., Father] | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 15, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-22-905990

### *Appearances:*

Patrick S. Lavelle, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee*.

MARY J. BOYLE, P.J.:

{¶ 1} Appellant-father ("Father") appeals the decision of the Cuyahoga County Juvenile Court terminating his parental rights and awarding custody of his minor son, B.B.C. (d.o.b. 06/01/22), to the Cuyahoga County Division of Children

and Family Services ("CCDCFS"), raising the following two assignments of error for review:

> **Assignment of Error I:** The trial court's award of permanent custody to [CCDCFS], despite [CCDCFS]'s failure to make reasonable efforts to eliminate the continued removal of the child from his home and to return the child to his home, violated state law and [Father]'s right to due process of the law as guaranteed by the Fourteenth Amendment of the United States Constitution and Section 16, Article 1 of the Ohio Constitution.

> **Assignment of Error II:** The trial court's decision to award permanent custody to [CCDCFS] was against the manifest weight of the evidence.

{¶ 2} For the reasons set forth below, we affirm.

## I. Facts and Procedural History

{¶ 3} On June 14, 2022, CCDCFS filed a complaint alleging that B.B.C., who was born 13 days earlier, was an abused and dependent child. Also filed with the complaint was a motion for predispositional temporary custody of B.B.C. to CCDCFS. After a hearing held that same day, the juvenile court ordered that B.B.C. be committed to the emergency temporary custody of CCDCFS.

{¶ 4} On August 31, 2022, CCDCFS amended its complaint. The amended complaint set forth the following allegations:

> 1. On or about June 1, 2022, at [B.B.C.]'s birth, Mother tested positive for cocaine, fentanyl, and amphetamines and [B.B.C.] tested positive for amphetamines, methamphetamines, benzos, cocaine, and fentanyl. [B.B.C.] was prescribed morphine to manage symptoms of withdrawal.

> 2. Mother has failed to visit with [B.B.C.] since she left the hospital against medical advice.

> 3. Mother has a long-standing substance abuse problem which prevents her from providing appropriate care for [B.B.C.]. Mother has

participated in substance abuse treatment but has failed to benefit from these services and has failed to maintain sobriety.

* * *

6. Alleged father, [J.R.], is currently incarcerated after being convicted of vandalism, attempted escape, failure to comply, receiving stolen property, aggravated possession of drugs, theft and petty theft. * * * He is not eligible for release until 2026. He also has pending criminal charges of drug possession, failure to comply, and receiving stolen property.

* * *

7. [Father] has not yet established paternity and has been unable to support, visit, or communicate with the child due to his incarceration.

(Amended complaint, Aug. 31, 2022.)

{¶ 5} The amended complaint further alleged that B.B.C. has a sibling who was also a drug-exposed infant, was adjudicated abused and neglected, and is in the permanent custody of CCDCFS. B.B.C. also has another sibling who was placed in the care of a relative through a private custody filing in Summit County, due, in part, to Mother's substance abuse issues. After an adjudicatory hearing held that same day, the court adjudicated B.B.C. to be abused and dependent. Father was present for the hearing and stipulated to the allegations of the amended complaint. Father, who was incarcerated at the time, was ordered to be transported back to the correctional facility, and CCDCFS was to obtain Father's DNA in order to establish paternity. The court continued the matter for an in-person hearing.

{¶ 6} On October 18, 2022, CCDCFS amended its dispositional request from permanent custody to temporary custody based on the establishment of Father's paternity and the desire to investigate potential placement with relatives.

Father agreed with this motion. The next day, the court held a dispositional hearing, at which the court heard testimony and accepted evidence. Following the conclusion of this hearing, the court issued a journal entry on October 20, 2022, placing B.B.C. in the temporary custody of CCDCFS.

{¶ 7} On February 2, 2023, CCDCFS filed a motion to modify temporary custody to permanent custody. The court held a trial on this matter on September 20, 2023. Mother did not appear at trial. Father appeared by video. The following evidence was adduced.

{¶ 8} CCDCFS became involved with B.B.C. at the time of his birth in June 2022 after he tested positive for various drugs. According to Deja Arthur, an extended worker in the START Department of CCDCFS ("Arthur"), Mother had not seen B.B.C. since the hospital. A case plan for Mother was developed in an effort to promote the permanency plan of reunification. The case plan included services for substance abuse, mental health, housing, parenting, and naming the child. The last time Mother had contact with Arthur was in August 2022. Arthur testified that Mother previously had her parental rights terminated in relation to B.B.C.'s older sibling.

{¶ 9} B.B.C. has remained in continuous agency custody since the time of his removal in June 2022. According to Arthur, B.B.C. has been with a maternal cousin since September 2022 and is strongly bonded with the maternal cousin and her family. CCDCFS also investigated paternal relatives in an effort to determine if a less restrictive alternative to permanent custody might be available, but those

efforts were unsuccessful. Arthur further testified that Father is currently incarcerated at the Marion Correctional Facility. CCDCFS facilitated some visitation between B.B.C. and Father at prison, at court, and by video. Father's case plan objective included establishing paternity for the child, which he did satisfy. The case plan contained no other objectives because he was incarcerated at the time of B.B.C.'s birth and at the time of trial, with an anticipated release date of July 2026. Arthur testified that she believes that Father loves B.B.C.

{¶ 10} Father testified, acknowledging that his release date from prison is in July 2026. Father testified that he was in Erie County Jail in Sandusky, Ohio when B.B.C. was born. He testified that he has tried to improve his situation by completing mental health and substance abuse classes while incarcerated.

{¶ 11} The guardian ad litem ("GAL") recommended that the court grant permanent custody of B.B.C. to CCDCFS. Following closing arguments, the juvenile court indicated that it would take the matter under advisement. The next day, the court issued a judgment entry in which it terminated Mother's and Father's parental rights and found by clear and convincing evidence that it is in B.B.C.'s best interest to be placed in the permanent custody of CCDCFS.

{¶ 12} The court found that reasonable efforts were made for reunification, such as referring Mother to substance abuse, mental health, parenting, housing services, and establishing a legal name for B.B.C. The court further found that B.B.C. has been in agency custody for 12 or more months of a consecutive 22-month period; B.B.C. cannot be placed with either parent within a reasonable time or should not

be placed with his parents; Mother has abandoned B.B.C.; B.B.C. is too young to express his wishes and the GAL recommends permanent custody; B.B.C. has been in CCDCFS custody since he was 13 days old; and B.B.C. deserves a safe and stable home environment, which cannot be achieved with either parent because Mother has had no contact with B.B.C. or CCDCFS in over a year and Father is incarcerated until 2026. The court approved the permanency plan, which consists of adoption and ordered one final visit between Father and B.B.C. at the correctional facility. Father now appeals the court's judgment.

## II. Law and Analysis

### A. Manifest Weight of the Evidence

{¶ 13} We will address the second assignment error first because it discusses the standard of review on appeal. In this assigned error, Father argues that the court's award of permanent custody was against the manifest weight of the evidence.

### 1. Standard of Review

{¶ 14} At the outset, we recognize that the right to raise one's own child is "an 'essential' and 'basic civil right.'" *In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). This right, however, is not absolute. "'The natural rights of a parent are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re Cunningham*,

59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla.App.1974).

**{¶ 15}** Father argues that the trial court's decision to grant permanent custody of B.B.C. to CCDCFS was against the manifest weight of the evidence because the record does not support the court's findings that B.B.C. cannot be placed with him within a reasonable time or should not be placed with him and that permanent custody is in B.B.C.'s best interest.

**{¶ 16}** The Supreme Court of Ohio has recently provided guidance on the standard of review in permanent custody cases. The Court held:

> [T]he proper appellate standards of review to apply in cases involving a juvenile court's decision under R.C. 2151.414 to award permanent custody of a child and to terminate parental rights are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments presented by the parties.

*In re Z.C.*, Slip Opinion No. 2023-Ohio-4703, ¶ 18. Thus, based on Father's argument, we will review this matter under the manifest-weight-of-the-evidence standard.

**{¶ 17}** The *In re Z.C.* Court reexplained the manifest-weight-of-the-evidence standard as follows:

> "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered" [*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20.] "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the

finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id.* at ¶ 14.

### 2. Permanent Custody — R.C. 2151.414

{¶ 18} R.C. 2151.414 sets forth a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. *In re B.P.*, 8th Dist. Cuyahoga No. 112332, 2023-Ohio-1377, ¶ 27, citing *In re S.C.*, 2018-Ohio-2523, 115 N.E.3d 813, ¶ 20 (8th Dist.). The first prong authorizes the juvenile court to grant permanent custody of a child to the public agency if, after a hearing, the court determines, by clear and convincing evidence, that any of the following factors apply: (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or

dependent child on three separate occasions by any court in this state or another state. R.C. 2151.414(B)(1)(a)-(e).

{¶ 19} The second prong of the analysis requires the juvenile court to determine, by clear and convincing evidence, that granting permanent custody to the agency is in the best interest of the child. R.C. 2151.414(B)(1). "'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re Z.C.* at ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

### a. The R.C. 2151.414(B)(1) Factors and R.C. 2151.414(E)

{¶ 20} In the instant case, the juvenile court made the findings under R.C. 2151.414(B)(1)(a) and (b) that B.B.C. could not be placed with either parent within a reasonable time or should not be placed with either parent and Mother abandoned B.B.C. In cases where R.C. 2151.414(B)(1)(a) applies, R.C. 2151.414(E) enumerates several factors for the court to consider. *In re D.H.*, 8th Dist. Cuyahoga No. 111323, 2022-Ohio-2780, ¶ 28, citing *In re L.J.*, 8th Dist. Cuyahoga No. 111221, 2022-Ohio-2278, ¶ 43; *see also In re L.C.*, 8th Dist. Cuyahoga No. 111053, 2022-Ohio-1592, ¶ 47. Pursuant to R.C. 2151.414(E), if the court determines, by clear and convincing evidence, that one or more of the (E)(1)-(16) factors exist, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time

or should not be placed with either parent. The court is only required to find one of the R.C. 2151.414(E) factors present in order to enter a finding that a child cannot or should be placed with a parent. *In re D.H.* at ¶ 29, citing *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343.

{¶ 21} Here, the trial court found the presence of several (E) factors, but Father takes issue with the court's findings under (E)(1) and (4), which provide in pertinent part:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>
> * * *
>
> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

R.C. 2151.414(E)(1) and (4).

{¶ 22} Father argues that CCDCFS did not engage in reasonable case planning and did not make diligent efforts to assist him in remedying the reasons for B.B.C.'s removal. He contends the court did not have sufficient information to determine whether CCDCFS had an obligation to prepare a case plan for Father and

give him an opportunity to perform it. While Father challenges the case plan and efforts under (E)(1), the other factors that the court considered, including Father's July 2026 prison release date, (E)(12); Mother's failure to remedy, (E)(1); lack of commitment, (E)(4); abandonment, (E)(10); prior termination of parental rights without evidence of rehabilitation, (E)(11); her unwillingness to provide for B.B.C's needs, (E)(14); and her failure to appear for any of the court hearings in the matter, (E)(16), were relevant in finding that B.B.C. cannot be placed with either parent within a reasonable time or should not be placed with either parent.

{¶ 23} At trial, Father admitted that he has been in prison since B.B.C.'s birth in June 2022. The evidence revealed that he was serving several concurrent prison sentences with an expected release date of July 2026. The court found, under R.C. 2151.414(E)(12), that Father was incarcerated at the time of the filing of the motion for permanent custody and will not be available for at least 18 months after the dispositional hearing, noting that Father is "expected to be released in 2026." This evidence alone is sufficient to satisfy the first prong of the two-part analysis. Therefore, we find the record clearly and convincingly supports the juvenile court's determination under R.C. 2151.414(B)(1)(a) that B.B.C. cannot or should not be placed with Father within a reasonable time.

{¶ 24} Father also asserts that the court's finding, under R.C. 2151.44(E)(4), that B.B.C. cannot or should not be placed with him was against the manifest weight of the evidence. Father's argument for this finding consists of one sentence. We decline to address this portion of his argument because Father fails to support it with

reasons in support of his contention, with citations to the authorities, statutes, and parts of the record on which he relies. App.R. 12 and 16.

{¶ 25} Having found that the juvenile court properly determined that at least one of the R.C. 2151.414(B)(1) factors applies by clear and convincing evidence, we must next determine whether the juvenile court appropriately found by clear and convincing evidence that granting permanent custody to CCDCFS is in B.B.C.'s best interest under R.C. 2151.414(D).

### b. R.C. 2151.414(D)(1) — Best Interest Determination

{¶ 26} The R.C. 2151.414(D)(1)(a)-(e) factors include (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers; (b) the child's wishes, as expressed directly by the child or through the child's guardian ad litem; (c) the child's custodial history; (d) the child's need for a legally secured permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (e) whether any of the factors set forth in R.C. 2151.414(E)(7)-(11) apply. A juvenile court must consider each of the R.C. 2151.414(D)(1) factors when making a permanent custody determination, but no one factor is given greater weight than the others. *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Only one of the factors set forth in R.C. 2151.414(D)(1), however, needs to be resolved in favor of permanent custody. *In re D.H.*, 2022-Ohio-2780, at ¶ 46, citing *In re G.W.*, 8th Dist. Cuyahoga No. 107512, 2019-Ohio-1533, ¶ 72.

**{¶ 27}** With regard to R.C. 2151.414(D)(1)(a), the court noted that B.B.C. has bonded with his caregiver and her family. Given Father's restrictions, CCDCFS did facilitate some visitation with B.B.C. and Father at prison, at court, and by video. At the conclusion of trial, the court acknowledged that it was apparent that Father loves B.B.C. Despite this, the court still found in favor of permanent custody, and this finding is supported by clear and convincing evidence.

**{¶ 28}** R.C. 2151.414(D)(1)(b) requires the court to consider the child's wishes as expressed directly or through the child's GAL. B.B.C. was just over one year old at the time of trial. The court noted that he is too young to express his wishes and the GAL recommended permanent custody, stating that permanent custody was in B.B.C.'s best interest. The court's finding is supported by clear and convincing evidence.

**{¶ 29}** R.C. 2151.414(D)(1)(c) requires the court to consider the child's custodial history, including whether the child has been in placement for 12 or more months of a consecutive 22-month period. Here, the court noted that B.B.C. has remained in continuous CCDCFS custody since he was 13 days old (June 2022). Therefore, B.B.C. had been in agency custody for 12 or more months of a consecutive 22-month period at the time of trial in September 2023. The evidence clearly and convincingly supports this finding.

**{¶ 30}** R.C. 2151.414(D)(1)(d) requires the court to consider the child's need for a legally secure placement and whether such can be achieved without a grant of permanent custody. During the pendency of the proceedings, CCDCFS attempted

to identify relatives who might qualify to serve as alternative caregivers for the children, but these efforts were unsuccessful. The court found that B.B.C. "deserves a safe and stable [home] environment where his needs can be met and he can thrive. This cannot be achieved with either parent as mother has had no contact with the child or Agency in over a year and Father is incarcerated until 2026." (Judgment Entry, 09/21/23.) This evidence clearly and convincingly supports the court's finding that B.B.C.'s need for secure placement cannot be satisfied by Father, who is not scheduled to be released from prison for over two and a half years after the conclusion of trial.

{¶ 31} R.C. 2151.414(D)(1)(e) requires the trial court to consider whether any of the factors in sections (E)(7) to (11) apply. Here, the trial court found that Mother abandoned B.B.C. as set forth in R.C. 2151.414(E)(10) and Mother previously had her parental rights terminated as set forth in R.C. 2151.414(E)(11).

{¶ 32} Based on the foregoing, we find there is clear and convincing evidence in the record to support the court's determination that permanent custody to CCDCFS is in the child's best interest. Accordingly, we find that the court's decision to grant permanent custody is not against the weight of the evidence as Father contends.

{¶ 33} Therefore, the second assignment of error is overruled.

**B. Reasonable Efforts at Reunification**

{¶ 34} In the first assignment of error, Father argues that the juvenile court failed to make adequate findings relating to CCDCFS's reasonable efforts to reunify

him with B.B.C. Father contends that the juvenile court failed to make the findings of fact required by R.C. 2151.419.

{¶ 35} We have previously addressed this issue, where we explained:

> R.C. 2151.419 requires the court to determine whether the public children services agency that filed the complaint in the case has made reasonable efforts to make it possible for the child to return safely home. However, that statute applies only to hearings held pursuant R.C. 2151.28, division (E) of R.C. 2151.31, R.C. 2151.314, R.C. 2151.33 or R.C. 2151.353. The motion for permanent custody in this case was filed pursuant to R.C. 2151.413. Therefore, the reasonable efforts demonstration is not required in the instant permanent custody analysis.

*In re C.N.*, 8th Dist. Cuyahoga No. 81813, 2003-Ohio-2048, ¶ 37, citing *In re Llewellyn*, 5th Dist. Fairfield Nos. 02CA10, 02CA11 and 02CA12, 2003-Ohio-1102. *See also In re B.P.*, 8th Dist. Cuyahoga No. 112332, 2023-Ohio-1377, ¶ 19; *In re I.A.-W.*, 8th Dist. Cuyahoga No. 111217, 2022-Ohio-1766, ¶ 17 (juvenile court is not required to make a reasonable-efforts determination when it was ruling on a motion for permanent custody); *In re Baby Boy M.*, 8th Dist. Cuyahoga No. 91312, 2008-Ohio-5271, ¶ 41 (same).

{¶ 36} Father concedes existing precedent from this court holds that reasonable-efforts findings are not required in permanent custody cases, but argues that this court's precedent misinterprets the law. However, in *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, the Ohio Supreme Court also held that a juvenile court is not required to make a reasonable-efforts determination when ruling on a motion for permanent custody. The *In re C.F.* Court explained:

By its terms, R.C. 2151.419 applies only at hearings held pursuant to R.C. 2151.28, 2151.31(E), 2151.314, 2151.33 or 2151.353. *See* R.C. 2151.419(A)(1). These sections involve adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state. The statute makes no reference to a hearing on a motion for permanent custody. Therefore, "[b]y its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414." [*In re A.C.*, 12th Dist. Clermont No. CA2004-05-041, 2004-Ohio-5531], ¶ 30.

This does not mean that the agency is relieved of the duty to make reasonable efforts. At various stages of the child-custody proceeding, the agency may be required under other statutes to prove that it has made reasonable efforts toward family reunification. To the extent that the trial court relies on R.C. 2151.414(E)(1) at a permanency hearing, the court must examine the "reasonable case planning and diligent efforts by the agency to assist the parents" when considering whether the child cannot or should not be placed with the parent within a reasonable time. However, the procedures in R.C. 2151.414 do not mandate that the court make a determination whether reasonable efforts have been made in every R.C. 2151.413 motion for permanent custody.

Therefore, we hold that R.C. 2151.419(A)(1) does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413. However, except for some narrowly defined statutory exceptions, the state must still make reasonable efforts to reunify the family during the child-custody proceedings prior to the termination of parental rights. If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time.

*Id.* at ¶ 41-43.

{¶ 37} In this case, the juvenile court previously determined that CCDCFS had made reasonable efforts to prevent removal of B.B.C. from the home when it granted predispositional temporary custody to CCDCFS. In a journal entry dated June 14, 2022, the juvenile court found, in relevant part:

> The Court further finds that the Agency made reasonable efforts to prevent the removal of the child from the home, to eliminate the continued removal of the child from the home, or to make it possible for the child to return home.
>
> The relevant services provided by the Agency to the family of the child and the reasons those services did not prevent the removal of the child from the home or enable the child to return home are as follows: drug and alcohol, parenting plan, mental health, which mother was evasive to.

{¶ 38} Thereafter, Father appeared with counsel for an adjudicatory hearing in August 2022. At that time, Father stipulated to the allegations of the complaint, as amended, and B.B.C. was adjudged abused and dependent. The matter was continued for an in-person disposition in October 2022. Father appeared again with counsel and stipulated to the amended disposition after which B.B.C. was ordered to be placed in the temporary custody of CCDCFS. Within the dispositional entry, which was journalized on October 19, 2022, the court included the following findings:

> The Court further finds that the reasonable efforts were made to prevent the removal of the child from the home, or to return the child to the home and finalize a permanency plan, to wit: reunification. Relevant services provided to the family include: The Mother was referred for Mental Health, Substance Abuse, Housing and Parenting Services. The Father established paternity.

{¶ 39} None of these findings were ever challenged by way of objection or appeal. Therefore, because the juvenile court made reasonable-efforts findings during the pendency of this case before the permanent-custody proceedings, the requirements of R.C. 2151.419 were satisfied. Moreover, the court also made the

following reasonable-efforts findings in the judgment entry granting CCDCFS's motion for permanent custody:

> The Court further finds that reasonable efforts were made to prevent the removal of the child from the home, or to return the child to the home and finalize a permanency plan, to wit: reunification. Relevant services provided to the family include: For Mother, Substance Abuse, Mental Health, Housing, Parenting and to establish a legal name for the Child. The Father is incarcerated until 2026.
>
> * * *
>
> Following the placement of the child outside the child's home and nothwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home.

(Judgment Entry, Sept. 21, 2023.)

{¶ 40} Based on the foregoing, not only did the juvenile court comply with the requirements of R.C. 2151.419 in its journal entries granting temporary custody, it also made reasonable-efforts findings in its final judgment entry granting permanent custody of B.B.C. to CCDCFS even though it was not required to do so. *See In re B.P.* at ¶ 22.

{¶ 41} Father further argues that CCDCFS failed to develop a case plan for him to assist with reunification efforts. He concedes, however, that he was incarcerated on the date of trial and is scheduled to be incarcerated until 2026.

{¶ 42} In *In re J.W.*, 8th Dist. Cuyahoga No. 108003, 2019-Ohio-1783, we stated: "Ohio courts have held that [the R.C. 2151.419 requirement to make reasonable efforts to prevent the removal of the child from the child's home]

generally does not require the agency to make unreasonable efforts to attempt reunification with an incarcerated parent." *Id.* at ¶ 15, citing *In re Da.B.*, 8th Dist. Cuyahoga No. 105866, 2018-Ohio-689, ¶ 38, citing *In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18 and 15CA19, 2016-Ohio-916 ("[A]ttempting reunification with such an incarcerated parent would be an unreasonable effort because of the obvious fact that the incarcerated parent lives in a prison; there is no possibility of reunifying the parent and child while the parent is imprisoned. The statute requires reasonable efforts, not unreasonable ones." *Id.* at ¶ 83.). In *In re J.W.*, the father was not included on the case plan because he was incarcerated before the permanent custody case was initiated and would remain incarcerated for more than 18 months after the dispositional hearing. *Id.* Similarly, in this case, Father testified that he was in Erie County Jail in June 2022 when B.B.C. was born and that he has been incarcerated since then. Father testified that his current release date is July 2026, which is nearly two years after the permanent custody hearing.

{¶ 43} In light of the foregoing, we find that CCDCFS was not required to make efforts that were unreasonable in light of the fact that Father is incarcerated until July 2026.

{¶ 44} Accordingly, the first assignment of error is overruled.

## III. Conclusion

{¶ 45} There is clear and convincing evidence in the record to support the juvenile court's determination that permanent custody to CCDCFS is in B.B.C.'s best interest. Accordingly, the court's decision to grant permanent custody is not against

the manifest weight of the evidence. Furthermore, the juvenile court complied with the requirements of R.C. 2151.419 in its journal entries granting temporary custody and made reasonable-efforts findings in its final judgment entry granting permanent custody of B.B.C. to CCDCFS. Lastly, the R.C. 2151.419 requirement to make reasonable efforts to prevent the removal of the child from the child's home generally does not require CCDCFS to make unreasonable efforts to attempt reunification with an incarcerated parent.

{¶ 46} Accordingly, judgment is affirmed.

Costs are waived.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR