**[Cite as *In re A.H.*, 2026-Ohio-467.]**

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE A.H.                                          :

                                                    :          No. 115457

[Appeal by S.H., Mother]                            :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 12, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD25903777

---

### *Appearances:*

Law Office of Anthony J. Richardson II, LLC, and Anthony
J. Richardson II, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant S.H. ("Mother") appeals the decision of the
Cuyahoga County Juvenile Court terminating her parental rights and awarding
permanent custody of her minor child A.H. ("the child") to the Cuyahoga County

Division of Children and Family Services ("the agency").[1] After careful review of the record, we affirm the juvenile court's decision.

## I. Facts and Procedural History

{¶ 2} The record reflects that on January 17, 2025, the child was committed to the emergency custody of the agency; however, the complaint was not resolved within the statutory timeframe. Consequently, the complaint was refiled on April 16, 2025. The complaint alleged that the child was dependent and requested an order of permanent custody be granted to the agency. An adjudicatory hearing was set for June 12, 2025.

{¶ 3} On June 12, 2025, Mother failed to appear for the adjudicatory hearing. Although Mother's counsel requested a continuance to secure Mother's presence, the trial court denied the request.

{¶ 4} Thereafter, Dekia Garrett ("Garrett") from the agency testified that she was the extended services supervisor assigned to the child's case. She advised the court that in 2019, Mother's parental rights were terminated for the child's sibling due in part to Mother's mental-health issues, which were diagnosed as anxiety and depression. In addition, in 2023, the child was removed from Mother's custody and adjudicated dependent because of Mother's lack of involvement with the child and her mental-health issues. The child was placed in Father's custody with protective services. Then in January 2025, the child was removed from

---

[1] Father's parental rights were also terminated in these proceedings; however, as of the writing of this opinion, Father has not appealed the trial court's decision. In this appeal, we will only address the facts that pertain to Mother.

Father's custody and placed in the agency's custody because of the Father's mental-health issues and the Mother's failure to visit or support the child or properly address her mental-health issues. Garrett testified that Mother did not have a relationship with the child and had not visited the child for almost two years. At the time of Garrett's testimony, the child was four years old. In addition, numerous exhibits were admitted into evidence by way of Garrett's testimony that established the previous judgments. At the close of the agency's case, the trial court found the child dependent and continued the matter to July 11, 2025, for a dispositional hearing.

{¶ 5} On the date of the dispositional hearing, Mother again failed to appear. Mother's counsel requested a continuance stating that counsel "had not had contact with [Mother] in some time, just by calling and leaving voicemails. [And] she last appeared in Court for the permanent custody trial on the previous case filing." (July 11, 2025, tr. 6-7.) Mother's counsel argued that permanent custody was premature and not in the child's best interest. The court noted for the record that this was the sixth complaint filed by the agency as it related to this child and that Mother was properly served and notified. The trial court questioned the child's guardian ad litem ("GAL") whether it was in the best interest of the child to continue the case or proceed. The child's GAL advised that it was in the best interest of the child to proceed with the hearing. The trial court then denied Mother's motion to continue.

{¶ 6} Prior to the hearing, the trial court granted, without objection, the agency's motion to incorporate the evidence from the adjudicatory hearing into the dispositional hearing. The matter proceeded to trial.

{¶ 7} The agency called Marsherie Dandridge ("Dandridge") to testify. She testified that she is employed by the agency and was assigned to the child's case in 2023 as the extended services worker. She explained that the agency implemented a case plan to promote reunification. Mother's plan included services to address her mental-health issues and to obtain stable housing. Although Mother attended her mental-health appointments on a weekly basis, Dandridge testified that Mother had not demonstrated any benefit from those services because Mother had not engaged with the child in two years and would go months without engaging with the agency. In addition, Mother did not have stable housing. At the time of trial, Mother was residing with a relative who had at least four other children living in the apartment, which was not appropriate housing for the child. Further, Mother was not working or providing for the child.

{¶ 8} Dandridge testified that the child was placed with the same foster family that he was previously placed with after his removal in 2023. Although the child exhibited some behavioral problems when he was returned to the foster family, the behavioral issues had resolved, and the child was doing well in foster care. Dandridge stated that the agency did not identify any potential relatives for possible placement of the child. She testified that it is in the child's best interest to grant permanent custody to the agency.

**{¶ 9}** The child's GAL testified that she has been the GAL for the child for the last four cases that were filed. She testified that the only time Mother appeared in court was when Father was granted legal custody in 2023. The GAL testified that Mother has never visited the child and has not substantially complied with the case plan. She confirmed that the child was doing well in foster care and indicated that it was in the child's best interest to grant permanent custody to the agency.

**{¶ 10}** The agency rested. Neither Mother nor Father presented a case. Thereafter, the trial court granted the motion for permanent custody to the agency and terminated Mother's parental rights. Mother appeals, raising the following assignments of error for our review:

> **Assignment of Error I:** The trial court committed reversible error by failing to continue the termination hearing.

> **Assignment of Error II:** The trial court committed error by terminating [Mother's] parental rights, where R.C. 2151.414 is unconstitutional as applied to [Mother]

## II. Law and Analysis

**{¶ 11}** In Mother's first assignment of error, she asserts that the trial court abused its discretion by denying Mother's oral motion to continue the permanent custody hearing when Mother failed to appear at the hearing. She contends that R.C. 2151.352 requires that "parents . . . of a child taken into custody . . . shall . . . be present at any hearing involving the child[.]" (Mother's brief, p. 8.) We find Mother's arguments unpersuasive.

{¶ 12} First and foremost, R.C. 2151.352 does not apply to child-custody cases. It applies to minors arrested for criminal offenses. What the statute actually states is:

> Section 2935.14 of the Revised Code [Rights of person arrested] applies to any child taken into custody. The parents, custodian, or guardian of such child, and any attorney at law representing them or the child, shall be entitled to visit such child at any reasonable time, be present at any hearing involving the child, and be given reasonable notice of such hearing.

R.C. 2151.352. Therefore, we find Mother's argument regarding R.C. 2151.352 misguided at best.

{¶ 13} Nevertheless, the decision on whether to grant a continuance lies within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. Even in permanent custody cases, the trial court possesses the same broad discretion. *In re A.W.*, 2020-Ohio-3373, ¶ 25 (8th Dist.).

{¶ 14} Additionally, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Unger* at 67, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

{¶ 15} When a nonincarcerated parent fails to appear at a hearing and challenges the trial court's refusal to continue a permanent custody hearing to accommodate the parent's circumstances, the appellate courts have applied the factors set forth in *Unger* to determine whether the court abused its discretion. *In re D.K.*, 2015-Ohio-546, ¶ 11 (2d Dist.). The *Unger* factors include:

> [T]he length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67-68.

{¶ 16} Under Juv.R. 23, "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." Finally, Loc.R. 35(C) of the Cuyahoga County Court of Common Pleas, Juvenile Division, provides:

> No case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as he/she became aware of the necessity to request a postponement. This rule may not be waived by consent of counsel.

{¶ 17} With the foregoing in mind, we review the denial of Mother's oral motion to continue. Here, Mother's counsel made an oral motion to continue prior to the start of trial because Mother failed to appear. Mother's counsel stated that she had not had contact with Mother in some time; however, she felt that permanent custody was premature. The court noted for the record that this was the sixth

complaint filed by the agency as it relates to this child and that Mother was properly notified. The trial court questioned the child's GAL whether it was in the best interest of the child to continue the case or proceed. The child's GAL advised that it was in the best interest of the child to proceed with the hearing. The trial court then denied Mother's motion to continue. We also note that Mother failed to appear at the adjudicatory hearing and according to the GAL's testimony, had not appeared to any court hearing since 2023. In addition, Mother had not visited or provided for her child in two years. Therefore, a continuance to secure Mother's presence would likely have been futile. Based on the foregoing, we cannot say the juvenile court abused its discretion in denying Mother's motion for continuance.

{¶ 18} Accordingly, Mother's first assignment of error is overruled.

{¶ 19} In Mother's second assignment of error, she argues that "termination of her parental rights under R.C. Chapter 2151 or other Ohio statute, was unconstitutional as applied because [Mother] was fit to parent and it was in [the child's] best interest to open the possibility of having a relationship with his biological mother." (Mother's brief p. 10.) Specifically, she argues that there was no evidence that she was unfit. We note that Mother raises her constitutional challenge for the first time on appeal.

{¶ 20} In a similar case, *In re N.B.*, 2025-Ohio-2780 (8th Dist.), Mother's counsel made the exact same argument that the termination of parental rights under

R.C. 2151.414 was unconstitutional as applied to father because he was fit to parent.[2]

This court rejected that argument, stating:

> When a constitutional challenge is not raised before the trial court, an appellate court is not required to address it. *In re L.B.*, 2022-Ohio-4748, ¶ 38, 205 N.E.3d 29 (8th Dist.), citing *In re K.*, 2004-Ohio-4629, ¶ 13 (8th Dist.). Indeed, it is well established that "[t]he 'failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal.'" *In re K.* at *id.*, quoting *State v. Awan*, 22 Ohio St.3d 120, 22 Ohio B. 199, 489 N.E.2d 277 (1986), syllabus. Because Father did not raise his constitutional challenges below, we decline to consider them now. See, e.g., *In re K.* at *id.*; *In re A.C.*, 2007-Ohio-4654, ¶ 22 (9th Dist.); *In re J.A. V.A.*, 2019-Ohio-4116, ¶ 13 (4th Dist.).

*Id.* at ¶ 53. Although Mother did not raise any constitutional challenges in the trial court, given the seriousness of the termination of parental rights, we will briefly review Mother's claim because we recognize that the right to raise one's own child is "an 'essential' and 'basic civil right.'" *In re Murray*, 52 Ohio St.3d 155, 156 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re B.B.C.*, 2024-Ohio-588, ¶ 14 (8th Dist.). We further recognize that "[p]arents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer,* 455 U.S. 745, 753 (1982.). However, "[t]he natural rights of a parent are not absolute, but are always subject to the ultimate welfare of the child, which is the

---

[2] We note that it is incumbent on the attorney to raise valid arguments that are properly before this court. This exact argument, by the same attorney, has been raised and rejected by this court multiple times. *See In re L.B.*, 2022-Ohio-4748 (8th Dist.); *In re E.J.*, 2023-Ohio-1376 (8th Dist.); *In re A.M.*, 2024-Ohio-1164 (8th Dist.); *In re N.B.* In addition, the Sixth District has also rejected this argument by the same attorney in *In re J.H.*, 2025-Ohio-4383 (6th Dist.).

polestar or controlling principle to be observed.'" *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla. App. 1974).

{¶ 21} Mother claims that the evidence does not support a finding that Mother "de facto abandoned" the child or that it was in the best interest of the child to grant permanent custody to the agency. (J.E., July 15, 2025.) Mother contends that the agency must prove "parental unfitness" to terminate Mother's parental rights citing *Santosky* at 761. As the agency points out, this argument is more akin to a manifest-weight-of-the-evidence challenge rather than an unconstitutional as-applied challenge.

{¶ 22} With regard to a challenge based on manifest weight of the evidence in permanent custody cases, the Ohio Supreme Court has explained that

> [w]hen reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman*, 132 Ohio St. 3d 328, 2012-Ohio-2179, ¶ 20, 972 N.E.2d 517]. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 10 Ohio B. 408, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*In re Z.C.*, 2023-Ohio-4703, ¶ 14.

{¶ 23} The termination of parental rights is governed by R.C. 2151.414 and determined by a two-prong test established therein. *In re J.C-A.*, 2020-Ohio-5336, ¶ 78 (8th Dist.), citing *In re M.H.*, 2002-Ohio-2968, ¶ 22 (8th Dist.). Before a court may terminate parental rights and award permanent custody of a child to the proper agency, it must determine by clear and convincing evidence that (1) one of the factors enumerated in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) an award of permanent custody is in the child's best interest. R.C. 2151.414(B)(1). "'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re Z.C.* at ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 24} In the instant case, the trial court determined that Mother had abandoned the child which is one of the factors enumerated in R.C. 2151.414(B)(1)(a)-(e), specifically subsection (e). The evidence at trial established that Mother had not visited the child for almost two years. R.C. 2151.011(C) states that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." Again, Mother has not visited or supported the child for two years. It is unclear how Mother can argue that she is fit to parent. Accordingly,

we find that it was established by clear and convincing evidence that Mother abandoned the child.

{¶ 25} Next, the trial court determined that it was in the best interest of the child to grant permanent custody to the agency after considering the factors set forth in R.C. 2151.414(D)(1). R.C. 2151.414(D)(1) requires that the juvenile court consider all relevant factors in determining whether the child's best interests would be served by granting the permanent-custody motion. These factors include (a) the interaction and interrelationship of the child with the child's parents; (b) the child's wishes, as expressed directly by the child or through the child's GAL; (c) the child's custodial history; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (e) whether any of the factors set forth in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1). A juvenile court must consider each of the R.C. 2151.414(D)(1) factors when making a permanent custody determination, but no one factor is given greater weight than the others. *In re Schaefer*, 2006-Ohio-5513, ¶ 56. Only one of the factors set forth in R.C. 2151.414(D)(1) needs to be resolved in favor of permanent custody. *In re D.H.*, 2022-Ohio-2780, ¶ 46 (8th Dist.), citing *In re G.W.*, 2019-Ohio-1533, ¶ 72 (8th Dist.). Furthermore, the Ohio Supreme Court has held that "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires." *In re A.M.*, 2020-Ohio-5102, ¶ 31.

{¶ 26} Here, the trial court stated that it considered each of the R.C. 2151.414(D)(1) factors and the record reflects that Mother did not have a relationship with the child; the GAL recommended permanent custody be granted; and finally, the child was in need of a legally secure permanent placement. Based on the foregoing, we find that there was clear and convincing evidence from which the trier of fact could have determined that permanent custody was in the best interest of the child. Furthermore, the trial court made the proper findings and considered the best interest of the child, and its decision to grant permanent custody to the agency is not against the manifest weight of the evidence.

{¶ 27} Accordingly, Mother's second assignment of error is overruled.

{¶ 28} Judgment affirmed.

It is ordered that costs are waived.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
DEENA R. CALABRESE, J., CONCUR